**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JEREMIAH VERNON WEBB,
Plaintiff,

v.                                                Case No.: ___8:26-cv-1523-JLB-NHA___

LIEUTENANT TYLER ROSSNAGLE, in his individual capacity;
LIEUTENANT JEFF STEINER, in his individual capacity;
OFFICER WILLIAM DELL, in his individual capacity;
OFFICER ANGELA COX, in her individual capacity;
DETECTIVE MEGAN L. BUCK, in her individual capacity; and
DETECTIVE AMELIA WICINSKI, in her individual capacity.
Defendants.

_____/

**VERIFIED COMPLAINT FOR DAMAGES
42 U.S.C. § 1983 – CIVIL RIGHTS ACTION
DEMAND FOR JURY TRIAL**

MAY 20 2026 PM3:48
FILED - USDC - FLMD - TPA

## I.  INTRODUCTION

1.      This is a civil-rights action under 42 U.S.C. § 1983 arising from individual

Sarasota police officers' use of materially false, misleading, and incomplete

stalking probable-cause materials to cause and continue a criminal prosecution

against Plaintiff Jeremiah Vernon Webb.

2.      Plaintiff lawfully requested police assistance for a court-ordered custody

pickup, met officers at Hall's residence, complied with officers, and left

peacefully. After Plaintiff left, Rossnagle, Steiner, and Dell participated in a



recorded Hall-residence interaction in which officers shaped a stalking narrative, opened or used a new stalking case number or access path, and discussed restricting Plaintiff's access to body-camera footage. Dell and Steiner later pursued, stopped, and cleared William Dolan as unrelated to Plaintiff. The stalking probable-cause affidavit omitted these exculpatory facts.

3.     Plaintiff brings claims for Fourth Amendment unreasonable seizure pursuant to legal process / malicious prosecution, First Amendment retaliation / retaliatory prosecution, and failure to intervene.

## II.    JURISDICTION AND VENUE

4.     This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

5.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

6.     Plaintiff seeks damages, nominal damages, punitive damages against the individual Defendants, costs, interest, reasonable attorney's fees to the extent Plaintiff later retains counsel or such fees are otherwise recoverable by law, and all other relief available by law.

7.     Costs and reasonable attorney's fees are recoverable under 42 U.S.C. § 1988 to the extent Plaintiff later retains counsel or such fees are otherwise recoverable by law.

8.    Venue is proper in the Middle District of Florida, Tampa Division, because the events and omissions giving rise to these claims occurred in Sarasota County, Florida.

## III.  PARTIES

9.    Plaintiff Jeremiah Vernon Webb is a natural person and citizen of the United States residing in Bradenton, Florida.

10.    Defendant Tyler Rossnagle was, at all relevant times, a Sarasota Police Department lieutenant acting under color of state law.

11.    Defendant Jeff Steiner was, at all relevant times, a Sarasota Police Department lieutenant acting under color of state law.

12.    Defendant William Dell was, at all relevant times, a Sarasota Police Department officer acting under color of state law.

13.    Defendant Angela Cox was, at all relevant times, a Sarasota Police Department officer acting under color of state law and the officer who prepared and swore to the Non-Arrest Complaint / Probable Cause Affidavit against Plaintiff.

14.    Defendant Megan L. Buck was, at all relevant times, a Sarasota Police Department detective acting under color of state law.

15.    Defendant Amelia Wicinski was, at all relevant times, a Sarasota Police Department detective acting under color of state law.

16.    All Defendants are sued in their individual capacities.

## IV.    FACTUAL ALLEGATIONS

### A.    Lawful parenting-plan and police-standby context

17.    Before August 30, 2025, SPD knew or had ready access to records showing that Plaintiff's contacts with Hall and law enforcement arose from court-ordered time-sharing, custody enforcement, welfare concerns, documentation, and conflict avoidance, not stalking.

18.    In March 2025, SPD prepared a separate Non-Arrest Complaint / Probable Cause Affidavit against Hall for interference with custody.

19.    That March 2025 affidavit identified Plaintiff as the victim, stated that SPD reviewed the custody agreement, and reflected that the dispute involved court-ordered time-sharing.

20.    The March 2025 affidavit stated that Hall refused to hand over the child and that a judge had denied Hall's emergency request for full custody.

21.    Plaintiff's parenting order authorized exchanges at Hall's residence during his time-sharing periods.

22.    Plaintiff used police assistance to avoid conflict and reduced police-assisted contacts below what the parenting order permitted.

23.    SPD also had access to family-court and forensic materials undermining Hall's recurring claim that Plaintiff was unsafe, abusive, or had no legitimate parenting purpose.

24.    This context was material because Florida stalking requires willful, malicious, repeated conduct that serves no legitimate purpose.

25. Defendants omitted the lawful parenting-plan, custody-enforcement, and police-standby context from the stalking probable-cause materials, although those facts were known or readily available to SPD.

**B.    August 30, 2025 police standby and peaceful departure**

26. On August 30, 2025, before going to Hall's residence, Plaintiff called SPD's recorded non-emergency number and requested a "standby for a custody pickup."

27. During that call, Plaintiff told dispatch he had his court order, did not expect weapons, and did not expect a disturbance.

28. SPD's CAD record classified the event as an "OFFICER STAND BY."

29. Plaintiff requested the standby to avoid conflict, document the encounter, and ensure officers were present if issues arose involving property, Hall, or the parties' minor child.

30. Plaintiff's request was consistent with his repeated practice of calling police first, meeting officers at Hall's residence, and leaving with or immediately before SPD.

31. Plaintiff did not call SPD to threaten, harass, stalk, or intimidate Hall.

32. Plaintiff did not go to Hall's residence outside his lawful time-sharing purpose or without first involving law enforcement during the relevant period.

33. SPD officers, including Dell, Rossnagle, and Steiner, responded to or were assigned to the August 30, 2025 standby.

34.    Dell had previously responded when Plaintiff called SPD before going to Hall's residence for court-ordered time-sharing.

35.    Body-camera footage recorded Plaintiff's August 30, 2025 interaction with Dell, Steiner, and Rossnagle before Plaintiff left Hall's residence.

36.    Plaintiff was calm, cooperative, compliant, and non-threatening.

37.    Steiner acknowledged facts showing Plaintiff's legitimate time-sharing purpose.

38.    Plaintiff explained his court-ordered time-sharing purpose, complied with officers, agreed to wait as requested, and left Hall's residence at approximately 9:43 a.m.

39.    No officer detained or arrested Plaintiff at the scene.

40.    No officer told Plaintiff he had committed stalking.

41.    No credible evidence shows Plaintiff returned to Hall's residence after leaving at approximately 9:43 a.m.

## C. Post-departure stalking-case discussion at Hall's residence

42.    After Plaintiff left, Rossnagle, Steiner, Dell, and other SPD personnel entered Hall's residence and participated in a recorded post-departure interaction with Hall.

43.    Body-camera footage identified as Axon_Body_4_Video_2025-08-30_0946_D01AF487P_4 recorded Hall, Dell, Rossnagle, Steiner, and other SPD personnel inside Hall's home after Plaintiff

left. Dell identified Rossnagle and Steiner to Hall as his supervisors. Rossnagle and Steiner were supervisory officers present for the interaction and participated in, directed, approved, or failed to correct the case-building conduct.

44.    Inside Hall's home, officers discussed Plaintiff's history with SPD, including complaints, public-records activity, or litigation.

45.    During the recorded interaction, officers discussed wanting to "get rid of" Plaintiff and "build a case" against him.

46.    At the time of those statements, officers knew Plaintiff had just left peacefully and had no new evidence that Plaintiff had committed stalking.

47.    Rossnagle directed or encouraged Hall toward a stalking complaint and explained stalking concepts to Hall.

48.    Rossnagle and other officers used leading questions and stalking concepts to shape Hall's accusation narrative.

49.    During the same interaction, officers opened or used a new stalking case path, discussed making the matter "its own" case so Plaintiff could not obtain the footage, and provided case number 25-041604.

## D.    Dolan suspicion narrative and exculpatory clearing

50.    Later that morning, Dell and Steiner observed and followed a white male near the post office and in or near Hall's neighborhood.

51.    The 1032 body-camera transcript records Dell stating, "What the hell is this guy doing?" and communicating with Steiner about the subject's movements.

52. Dell and Steiner generated a Webb-related suspicion narrative before verifying any connection to Plaintiff.

53. The body-camera footage did not show Plaintiff, a confirmed Plaintiff vehicle, or any verified Plaintiff-connected person.

54. Dell followed and stopped the person near East Avenue and Magnolia while communicating with Steiner.

55. Dell and Steiner contacted the person and requested identifying information.

56. The person was William Dolan, not Plaintiff.

57. Dolan did not resemble Plaintiff and denied any connection to Plaintiff or Hall.

58. Dell and Steiner cleared Dolan as unrelated to Plaintiff.

59. Dell and Steiner later confirmed an innocent explanation for Dolan's presence through a follow-up at Dolan's residence.

60. After Dell and Steiner cleared Dolan, SPD had no factual basis to use Dolan as evidence that Plaintiff followed, watched, stalked, or harassed Hall.

**E.    Cox prepares a materially misleading probable-cause affidavit**

61. On or about September 5, 2025, Cox prepared and swore to a Sarasota County Non-Arrest Complaint / Probable Cause Affidavit in Case No. 2025-00041604.

62. The affidavit charged Plaintiff with simple stalking under Fla. Stat. § 784.048(2).

63. Cox's affidavit relied materially on Hall's statements. Before swearing to the affidavit, Cox had access to or could readily review SPD CAD records, body-camera footage, incident reports, Hall interview materials, and Dolan-related records showing Plaintiff's lawful standby request, peaceful departure, non-return, Hall-residence case-building, and Dolan clearing.

64. Hall's statements had been shaped by officer involvement, including the recorded Hall-residence interaction after Plaintiff left.

65. Before Cox swore the September 5, 2025 affidavit or before case materials were submitted for SAO review, Wicinski interviewed Hall in the record titled Ligia_Hall_Interview_9.3.25_3.wav concerning the newly opened stalking/harassment matter after the August 30 events. During that interview, Wicinski distinguished the new matter from the earlier custody-interference case, framed the new matter as harassment by Plaintiff, stated that the matter was a separate case, acknowledged reviewing or relying on prior SPD reports, discussed patrol coordination, solicited or requested school-related documentation, and contributed to a continued stalking/probable-cause narrative without disclosing the omitted exculpatory facts.

66. In the affidavit, Cox wrote that "Webb has been seen at the post office and parking lots near their residence."

67. Cox included that assertion in a narrative alleging that Plaintiff had "relentlessly harassed" Hall and her family, sent officers to Hall's residence "over 20 times," and caused Hall and her family to fear that they were being followed and harassed.

68. The post-office, parking-lot, or neighborhood-walking assertion was materially false or misleading because it was unsupported by verified evidence connecting Plaintiff to the area after he left.

69. The post-office, parking-lot, or neighborhood-walking assertion was also materially false or misleading because Dell and Steiner cleared Dolan as unrelated to Plaintiff.

70. In the affidavit, Cox stated that she and Buck spoke with Hall "in reference to ongoing harassment and a custody dispute."

71. Cox recited Hall's accusations and concluded: "Due to these ongoing issues of harassment, I am requesting an SAO review of this case for Stalking."

72. That presentation was materially false or misleading because the affidavit did not disclose officer coaching, case-building discussion, or the new case-access path associated with the Hall-residence interaction.

73. In the affidavit, Cox acknowledged there was "an ongoing family court case addressing the custody issue."

74. Cox nevertheless described Plaintiff's police-assisted contacts as "ongoing harassment."

75. Cox stated that Plaintiff had sent officers to Hall's residence "over 20 times" for welfare checks and while "demanding to take his daughter."

76. Cox included those police-assisted contacts as part of the stalking narrative submitted for SAO review.

77. That presentation was materially false or misleading because Plaintiff's police-assisted contacts were tied to court-ordered parenting, welfare concerns, documentation, conflict avoidance, and legitimate purpose.

78. The affidavit omitted that Plaintiff called SPD first, requested a custody standby, acted peacefully, complied with officers, left at approximately 9:43 a.m., and did not return.

79. The affidavit omitted that Dell and Steiner generated the Dolan suspicion without verified Webb-related evidence, then cleared Dolan and confirmed he had no verified connection to Plaintiff.

80. The affidavit omitted the recorded Hall-residence case-building interaction, the new stalking case-access path, the later Hall interview framing, internal new-case routing, and school-side notification.

81. The affidavit omitted known facts showing Plaintiff's lawful parenting purpose, police-first practice, reduced-contact practice, and SPD's prior knowledge that the dispute involved court-ordered time-sharing and custody enforcement.

82. Had the probable-cause materials disclosed the full facts known to SPD, those materials would not have established stalking under Fla. Stat. § 784.048(2).

83.   The omitted facts showed that Plaintiff requested a custody standby, had a court-ordered parenting purpose, acted peacefully, complied with officers, left at approximately 9:43 a.m., did not return, and did not use Dolan or anyone else to follow, watch, stalk, or harass Hall.

84.   The omitted facts also showed that the post-office and parking-lot suspicion was unsupported by verified evidence connecting Plaintiff to the area after he left, that Dell and Steiner cleared Dolan as unrelated to Plaintiff, and that Hall's stalking narrative was shaped after officers discussed building a case against Plaintiff.

85.   Corrected to include those facts and remove the false implications, the probable-cause materials did not show willful, malicious, repeated harassment serving no legitimate purpose, and did not establish probable cause or arguable probable cause for stalking.

86.   The State Attorney's charging decision was based on SPD's submitted probable-cause materials, including Cox's affidavit and related SPD case materials. Those materials did not disclose Plaintiff's lawful custody-standby call, peaceful departure, non-return, Dolan clearing, Hall-residence case-building, case-access discussion, or the absence of verified evidence connecting Plaintiff to the post office or parking lots after he left. Because the prosecution was based on SPD's materially misleading submission, the State Attorney's filing decision did not break causation.

**F.   Criminal process, restraint, favorable termination, and injury**

87. On October 17, 2025, Sarasota County opened State of Florida v. Jeremiah V. Webb, Clerk No. 2025MM010076NC, charging Plaintiff with stalking under Fla. Stat. § 784.048(2).

88. Plaintiff was summoned or otherwise required to answer the criminal charge.

89. Plaintiff was required to appear in criminal court, consult with appointed counsel, defend the case, comply with criminal-case obligations, and live under the stigma and restraints of criminal prosecution.

90. On November 21, 2025, the criminal court entered a No-Contact Order restricting Plaintiff's contact with Hall except as expressly authorized by the Parenting Plan and family-court orders.

91. The No-Contact Order was a criminal-process restraint because Plaintiff faced risk of arrest, revocation, contempt, or further criminal consequences if he failed to comply.

92. The stalking prosecution was used against Plaintiff in related family-court proceedings, including before a final hearing concerning time-sharing and Hall's withholding of the parties' minor child.

93. On April 6, 2026, through appointed counsel, Plaintiff filed a verified Motion to Dismiss under Fla. R. Crim. P. 3.190(c)(4).

94. The Motion to Dismiss argued that the undisputed facts did not establish a prima facie stalking offense.

95. The Motion to Dismiss argued that Plaintiff's police-assisted parenting-plan conduct served a legitimate purpose.

96. The Motion to Dismiss argued that Plaintiff had not visited Hall's residence without law enforcement present from February 1, 2025 forward.

97. On May 5, 2026, while Plaintiff's verified Motion to Dismiss was pending, Assistant State Attorney Riley D. Matthews notified defense counsel that "the State has entered a NP on this charge."

98. On May 15, 2026, the Clerk filed the State's written Nolle Prosequi in State of Florida v. Jeremiah V. Webb, Clerk No. 2025MM010076NC, Agency No. 2025-SPD-041604.

99. The stalking prosecution ended without conviction and terminated in Plaintiff's favor.

100. Plaintiff suffered loss of liberty interests and personal security through criminal legal process.

101. Plaintiff was forced to defend a criminal stalking charge that lacked probable cause.

102. Plaintiff suffered reputational harm from being falsely portrayed as a stalker.

103. Plaintiff suffered emotional distress, anxiety, humiliation, fear, loss of trust in law enforcement, and physical symptoms of stress.

104. Plaintiff incurred financial losses, including defense costs, litigation costs, public-records and evidence-review expenses, time losses, and related expenses.

105. Plaintiff suffered damage in related family-court proceedings when the criminal charge was used against him.

## V.    CAUSES OF ACTION

### COUNT I

### 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEIZURE PURSUANT TO LEGAL PROCESS / MALICIOUS PROSECUTION

### (Against Cox, Rossnagle, Steiner, Dell, Buck, and Wicinski)

106. Plaintiff incorporates Paragraphs 1 through 105.

107. Defendants acted under color of state law.

108. Defendants caused, initiated, supported, or continued criminal legal process against Plaintiff for stalking.

109. Cox prepared and swore to the Non-Arrest Complaint / Probable Cause Affidavit.

110. Buck participated in the Hall interview or case-review process before the affidavit was submitted for SAO review, had access to Hall's statements and related case materials, and failed to correct the materially incomplete stalking narrative despite the omitted lawful-purpose, peaceful-departure, and Dolan-clearing facts.

111.  Rossnagle participated as a lieutenant and supervisory officer in coaching Hall and shaping the stalking narrative.

112.  Steiner participated as a lieutenant and supervisory officer in the Hall-residence case-building and case-access discussion despite knowing Plaintiff's conduct arose from court-ordered time-sharing and lawful police assistance.

113.  Dell participated in the Hall-residence interaction, the new case-access path, the Dolan investigation, the Dolan clearing, and the failure to disclose exculpatory facts.

114.  Before Cox swore the September 5, 2025 affidavit or before case materials were submitted for SAO review, Wicinski participated in the post-August 30 investigative and witness-development process by interviewing Hall in the record titled Ligia_Hall_Interview_9.3.25_3.wav about the newly opened stalking/harassment matter, distinguishing it from the earlier custody-interference case, framing Plaintiff's conduct as harassment, reviewing or relying on prior SPD reports, coordinating with patrol, soliciting collateral school-related materials, and contributing to internal, school-side, or probable-cause framing that treated Plaintiff as a safety concern without disclosing the omitted exculpatory facts.

115. The legal process supporting Plaintiff's seizure was constitutionally infirm because it rested on deliberate or reckless false statements, misleading implications, and material omissions.

116. Defendants caused or contributed to probable-cause materials that falsely or misleadingly implied Plaintiff engaged in stalking conduct after he left the area.

117. Defendants caused or contributed to probable-cause materials that used or permitted use of the Webb-related Dolan suspicion narrative and Dolan's innocent conduct as if they supported probable cause against Plaintiff.

118. Defendants caused or contributed to probable-cause materials that omitted Plaintiff's lawful purpose, peaceful departure, non-return, Hall coaching, Dolan clearing, case-access discussion, and materially incomplete internal or school-side alerts.

119. The omitted facts and false implications were material to probable cause.

120. Corrected to include the omitted facts, the probable-cause materials defeated the statutory elements of stalking because they showed a legitimate custody and police-standby purpose, no malicious conduct, no verified post-departure return, no verified Plaintiff-connected post-office or parking-lot conduct, and no conduct by Plaintiff using Dolan or any other person to follow, watch, stalk, or harass Hall.

121. Plaintiff was subjected to criminal legal process, court obligations, a criminal no-contact order, criminal-case restrictions, defense burdens, reputational injury, and related restraints.

122. The stalking prosecution terminated in Plaintiff's favor when the State entered a nolle prosequi and the case ended without conviction.

123. Defendants' acts violated Plaintiff's Fourth Amendment rights.

124. As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendants Cox, Rossnagle, Steiner, Dell, Buck, and Wicinski for compensatory damages, nominal damages, punitive damages, costs, reasonable attorney's fees under 42 U.S.C. § 1988 to the extent Plaintiff later retains counsel or such fees are otherwise recoverable by law, and all further relief the Court deems just and proper.

## COUNT II

### 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION / RETALIATORY PROSECUTION

### (Against Rossnagle, Steiner, and Dell)

125. Plaintiff incorporates Paragraphs 1 through 105.

126. Defendants acted under color of state law.

127.   Before August 30, 2025, Plaintiff engaged in protected First Amendment activity, including a March 22, 2025 written complaint to SPD concerning report accuracy and omissions, an April 5, 2025 Internal Affairs submission, an April 8, 2025 civil complaint involving SPD personnel, public-records requests, challenges to SPD body-camera and report practices, evidence submissions, and petitions to public officials.

128.   Rossnagle, Steiner, and Dell knew of Plaintiff's protected activity because they discussed Plaintiff's SPD history, complaints, public-records activity, or litigation during the recorded Hall-residence interaction. In that same interaction, officers discussed wanting to "get rid of" Plaintiff and "build a case" against him after Plaintiff had already left peacefully.

129.   The timing and context show retaliatory causation because the case-building discussion occurred after Plaintiff's protected complaints and records activity, after officers discussed his SPD history, and before the stalking probable-cause materials were created or used.

130.   Defendants took adverse action against Plaintiff by initiating, supporting, forwarding, approving, or maintaining a criminal stalking case against him.

131.   The adverse action would deter a person of ordinary firmness from continuing to complain about police misconduct, request records, petition public officials, or pursue litigation.

132.   Plaintiff's protected activity was a substantial or motivating factor in Defendants' actions.

133.   The stalking charge lacked probable cause for the reasons alleged in this Complaint.

134.   As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendants Rossnagle, Steiner, and Dell for compensatory damages, nominal damages, punitive damages, costs, reasonable attorney's fees to the extent Plaintiff later retains counsel or such fees are otherwise recoverable by law, and all further relief the Court deems just and proper.

## COUNT III

## 42 U.S.C. § 1983 – FAILURE TO INTERVENE / FAILURE TO CORRECT

### (Against Rossnagle, Steiner, and Dell)

135.   Plaintiff incorporates Paragraphs 1 through 105.

136.   Rossnagle, Steiner, and Dell acted under color of state law.

137.   The alleged misconduct was not a split-second event; it unfolded through recorded and reviewable stages, including the Hall-residence interaction and the Dolan investigation and clearing.

138.  Rossnagle had a realistic opportunity to intervene during the recorded Hall-residence interaction by stopping or correcting leading questioning, stalking-element coaching, case-building, and the use of a new case-access path.

139.  Steiner had a realistic opportunity to intervene during the recorded Hall-residence interaction by correcting the case-access and body-camera discussion, disclosing Plaintiff's lawful custody purpose, and stopping or correcting the case-building conduct.

140.  Dell had a realistic opportunity to intervene after the Dolan stop and follow-up by disclosing that Dolan was unrelated to Plaintiff and that Dolan's conduct did not support probable cause. Steiner had the same opportunity because he participated in the Dolan stop, clearing, and follow-up.

141.  Rossnagle, Steiner, and Dell failed to intervene or correct the known constitutional problem.

142.  Their failure to intervene or correct allowed the criminal case to proceed without probable cause.

143.  As a direct and proximate result, Plaintiff suffered damages.

144.  Defendants' conduct was intentional, reckless, malicious, or in callous disregard of Plaintiff's federally protected rights, supporting punitive damages against the individual Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants Rossnagle, Steiner, and Dell for compensatory damages, nominal damages, punitive damages, costs, reasonable attorney's fees to the extent Plaintiff later retains counsel or such fees are otherwise recoverable by law, and all further relief the Court deems just and proper.

## VI.    PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and award:

A. Compensatory damages;

B. Nominal damages;

C. Punitive damages against the individual Defendants;

D. Costs, litigation expenses, and reasonable attorney's fees under 42 U.S.C. § 1988 to the extent Plaintiff later retains counsel or such fees are otherwise recoverable by law;

E. Prejudgment and post-judgment interest where allowed by law;

F. Leave to amend based on facts learned through discovery; and

G. Any other relief the Court deems just and proper.

## VII.  JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VIII. VERIFIED DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the factual statements made in this Complaint are true and correct to the best of my knowledge, information, and belief

JEREMIAH VERNON WEBB
 Plaintiff, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211
801-755-9600
jeremiah@shoponfire.com

Executed this 20th day of May, 2026